**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ansaf Alexander,

Plaintiff,

v.

The Northland Inn,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2035 ADM/AJB

---

Mark A. Greenman, Esq., and Ruth Y. Ostrom, Esq., Greenman & Ostrom, Minneapolis, Minnesota, appeared for and on behalf of the Plaintiff.

Bradley J. Lindeman, Esq., and John J. McDonald, Jr., Esq., Meagher & Geer, P.L.L.P., Mineapolis, Minnesota, appeared for and on behalf of the Defendant.

---

## I. INTRODUCTION

On December 6, 2001, the undersigned United States District Judge heard Defendant Northland Inn's (the "Inn") Motion for Summary Judgment [Doc. No. 25]. The Inn seeks summary judgment on Plaintiff Ansaf Alexander's ("Plaintiff") discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. For the reasons set forth below, the Inn's Motion is granted.

## II. BACKGROUND[1]

The nub of this case is the Inn's need for an employee able to vacuum and Plaintiff's inability to fulfill this need. The Northland Inn is a Triple-A, four-star rated hotel. *See* Alexander Aff., at 279. The Inn employed Plaintiff as a p.m. housekeeping supervisor. *Id.* at 33;

---

[1] The evidence is reviewed in the light most favorable to Plaintiff.

FEB 15 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD FEB 15 2002
DEPUTY CLERK

Elabbady Dep., at 7. The Inn's housekeeping department operates on three shifts: a day shift, a p.m. shift, and a night shift. Alexander Dep., at 37. The p.m. shift runs from approximately 3:00 p.m. to 11:00 p.m. *Id.* at 33. When day housekeeping supervisors took time off or vacations, Plaintiff, as p.m. housekeeping supervisor, would fill in for them on that shift. Radke Dep., at 8.

The housekeeping department is responsible for maintaining the neat appearance of the hotel's common areas, cleaning guest suites, cleaning the office areas, and cleaning the dining room of the restaurant. *See* Alexander Dep., at 33-37. Plaintiff supervised the housekeepers in the cleaning tasks, and assisted them when necessary. *Id.* at 57; Lindeman Aff. Ex. D (position description for p.m. housekeeping supervisor). Between one and three housekeepers would be under Plaintiff's supervision during the p.m. shift. The "basic function" of the p.m. housekeeping supervisor is to "[a]ssist the Executive Housekeeper to maintain cleanliness and attractive appearance in guest accommodations and public areas in accordance with [the Inn's] standards." Lindeman Aff. Ex. D. The Inn requires all housekeeping employees, including supervisors, to perform cleaning tasks. *See* Elabbady Dep., at 7-8; Christensen Dep., at 19-20; Radke Dep., at 10-11, 18. The housekeeping duties include vacuuming the rooms, common areas and the restaurant. *See* Alexander Dep., at 51-52, 56-57.

During the relevant time period, the Inn faced labor shortages and truancy problems with the housekeeping department staff. *See* Elabaddy Dep., at 8. Even when the Inn was able to hire sufficient staff, some housekeeping employees would not show up for work. *See id.*; Alexander Dep., at 61-62. As the housekeeping supervisor, Plaintiff was responsible for picking up the slack when the department was shorthanded and completing the duties of the absent housekeepers. Alexander Dep., at 64-65. The Inn considers all housekeeping supervisors to be

"working" supervisors. Elabaddy Dep., at 7-8.

In October, 1997, Plaintiff was involved in an automobile accident. Alexander Dep., at 68. She was examined at a hospital and released. *Id.* at 69. Her injuries from this accident form her allegations of disability in this action. Plaintiff continues to suffer from neck and back pain and a doctor has diagnosed her with permanent chronic pain syndrome. *See* Greenman Aff. Ex. A (letter from Dr. Steven S. Lebow of 06/02/1999).

On May 27, 1998, the Inn hired Plaintiff.[2] At that time, Plaintiff informed the Inn of her work restrictions resulting from her accident. For many months, Plaintiff followed the Inn's requirement that she vacuum where it was needed. *See* Alexander Dep., at 51, 81, 83, 90, 97. She was able to complete her job duties without accommodation. *Id.* at 165.

However, on February 24, 1999, the Inn's assistant executive housekeeper, Heidi Radke, directed Plaintiff to vacuum a room and she refused. *See* Radke Dep., at 23-24; Alexander Dep., at 301-02; Lindeman Aff. Ex. I (memo from Heidi Radke of 02/24/1999). On that day, Plaintiff received a chiropractor's note excusing her from the next two days of work. *See* Lindeman Aff. Ex. J (note from Michelle Greenman of 02/24/1999). When Plaintiff returned to work on February 27, 1999, she brought a "report of workability," in which her doctor stated that she was limited to lifting a maximum of 10 pounds, limited from any repetitive lifting or carrying, restricted bending to 35 degrees, and "no heavy or repetitive pushing or pulling." Lindeman Aff. Ex. K (report from Dr. Tracy Wolf of 02/25/1999). These restrictions were labeled "permanent." *Id.*

---

[2] The Inn employed Plaintiff twice, originally hiring her in 1997. Plaintiff voluntarily resigned on February 14, 1998, to pursue housekeeping opportunities at another hotel. The Inn re-hired her about three and a half months later.

In light of new permanent restrictions, the Inn sought clarification regarding Plaintiff's ability to perform the essential functions of her job as p.m. housekeeping supervisor. *See* Christensen Dep., at 8-9. In a faxed letter to Plaintiff's treating physician, Dr. Wolf, the Inn specifically asked whether Plaintiff could vacuum 3-5 times per day and inspect under the beds. Lindeman Aff. Ex. L (letter from Jennifer Strom of 03/08/1999). Dr. Wolf responded by returning the faxed letter with handwritten notes in the margins, including a notation that Plaintiff could check under beds if she bended using the proper technique. *Id.* Dr. Wolf wrote "No" in response to the inquiry regarding occasional vacuuming. *Id.* Dr. Wolf also returned a copy of the position description for p.m. housekeeping supervisor with a handwritten note saying: "19. No vacuuming." Lindeman Aff. Ex. M. This handwritten amendment was added to a list of enumerated essential job functions, the last of which was: "18. Provide assistance in other job classifications as determined necessary by immediate supervisor." *Id.*

Based upon Dr. Wolf's response, the Inn understood that Plaintiff was unable to engage in any vacuuming. *See* Christensen Dep., at 38-39. On March 30, 1999, the Inn terminated Plaintiff from her position as p.m. housekeeping supervisor because of her permanent inability to vacuum. Radke Dep., at 27; Alexander Dep., at 117-18. Thereafter, Plaintiff alleges she requested accommodations from the Inn: move her permanently to a day supervisor position, or relocate her to a position that did not require any vacuuming. *See* Alexander Dep., at 152-54, 161. Before this time, Plaintiff had not requested any adjustments to her job duties. *See id.* at 165; Elabbady Dep., at 6, 8; Christensen Dep., at 9; Trammell Dep., at 16. After Plaintiff told her next doctor that the Inn fired her, he responded, "[i]f you are able to vacuum just go ahead." Alexander Dep., at 118.

Plaintiff characterized her impairment as "slight." *Id.* at 245. She testified that she could complete all her job duties, except vacuuming. *See id.* at 156, 158, 161. Plaintiff stated that she was able to vacuum at her home. *Id.* at 113. Following her dismissal from the Inn, Plaintiff applied for numerous jobs suited to her qualifications and physical limitations. By October, 2000, Plaintiff's doctor had removed all work restrictions. *See* Lindeman Aff. Ex. N (notes by Dr. Martha Hickner of 10/13/2000).

**III. DISCUSSION**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The stated purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA prohibits employers from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).

To establish a prima facie case of discrimination under the ADA, Plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she suffered an

adverse employment action because of her disability. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

At issue is whether Plaintiff was disabled within the meaning of the ADA and whether Plaintiff was qualified to perform the essential functions of her housekeeping job at the Inn with or without reasonable accommodation.

**A. Disability**

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §§ 12102(2)(A)-(C). The determination of a person's disability for purposes of the ADA is made with reference to the mitigating measures that person employs. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482 (1999). Plaintiff has failed to set forth evidence creating a genuine issue of material fact concerning whether her impairment constitutes a "disability" within any of the ADA's three definitions.

**1. Impairment substantially limits a major life activity**

Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R.§ 1630.2(i). Several

factors may be considered to determine whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. *Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 679 (8th Cir. 2001) (citing 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii)). A major life activity is substantially limited if an individual is unable to "perform a basic function that the average person in the general population can perform" or is significantly restricted in "the condition, manner, or duration under which [he] can perform a particular major life activity as compared to an average person in the general population." *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997); *see* 29 C.F.R. § 1630.2(j)(1).

First, Plaintiff alleges she is substantially limited in the major life activities of lifting, bending, pushing, or pulling. She must present evidence from which a reasonable inference can be drawn that such major life activities are substantially limited. *Snow*, 128 F.3d at 1207. "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 122 S.Ct. 681, 691 (2002). "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* The ADA's terms are "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* Plaintiff must present evidence that she is prevented or severely restricted from doing activities that are of central importance to most people's daily lives. *Id.*

Plaintiff has not met this standard. Her alleged inability to perform a single, particular job, such as vacuuming, does not constitute a substantial limitation of a major life activity. The

Eighth Circuit has consistently held that a general lifting restriction is insufficient to constitute a disability within the meaning of the ADA. *See Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir. 1998); *Snow*, 128 F.3d at 1207; *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1319 (8th Cir. 1996). Plaintiff has failed to present evidence sufficient to qualify her as a disabled person under the ADA on the basis of her lifting, bending, pushing or pulling restrictions.

Plaintiff next argues that she is substantially limited in the major life activity of working. Assuming that working is a major life activity,[3] a person may be "substantially limited" from working if they are "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). To be regarded as substantially limited in the major life activity of working, a person must be regarded as precluded from more than a particular job. *See Murphy v. United Parcel Serv.. Inc.*, 527 U.S. 516, 523 (1999); *Miller v. City of Springfield*, 146 F.3d 612, 615 (8th Cir. 1998) (holding that a limitation on a single, particular job cannot constitute a substantial limitation of the major life activity of working under the ADA); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) ("An impairment that

---

[3] The Supreme Court noted that "there may be some conceptual difficulty in defining 'major life activities' to include work, for it seems to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap." *Sutton*, 527 U.S. at 492. Indeed, the EEOC suggested that working be viewed as a residual life activity, considered, as a last resort, *only* "[i]f an individual is not substantially limited with respect to *any other* major life activity." 29 C.F.R. pt. 1630, App. §§ 1630.2(j).

disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one.").

Plaintiff has failed to demonstrate that because of her impairment she has suffered a significant reduction in meaningful employment opportunities. *See Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir. 1996). Plaintiff has applied for a variety of different jobs suited to her abilities and is currently employed. She lacks evidence indicating she is unable to perform a class of jobs or a broad range of jobs in various classes. *See Coffey v. County of Hennepin*, 23 F.Supp.2d 1081, 1088 (D. Minn. 1998). Plaintiff's impairment does not substantially limit a major life opportunity sufficient to constitute a disability within the ADA definition.

**2. Record of such an impairment**

Plaintiff has failed to set forth sufficient evidence to establish that she has a record of a disability.[4] As discussed above, Plaintiff's impairment does not substantially limit a major life activity. Accordingly, there can be no record of an impairment that substantially limits a major life activity.

**3. Regarded as having such an impairment**

There is no evidence indicating that the Inn regarded Plaintiff as disabled. The two ways in which an individual may fall within the ADA's third definition of "disability" are: (1) an employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) an employer mistakenly believes that an actual, non-

[4] Because subsections (B) & (C) must be read in conjunction with subsection (A), the "impairment" must substantially limit a major life activity. *See* 42 U.S.C. §§ 12102(2)(A)-(C); *Miller*, 146 F.3d at 614.

limiting impairment substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489. "In both cases, it is necessary that [the employer] entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* Here, no evidence exists to indicate that the Inn believed Plaintiff suffered a substantially limiting impairment. The Inn did not consider Plaintiff unable to perform a broad class or range of jobs.

Plaintiff is unable to identify a genuine issue of material fact regarding whether she is "disabled" within any of the three definitions under the ADA.

**B. Essential Function**

Even assuming Plaintiff is "disabled" within the meaning of the ADA, she must demonstrate that she is "qualified" within the meaning of the ADA. *See Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir. 1998). There is no dispute that Plaintiff meets the necessary prerequisites for employment at the Inn, such as education, experience and training. The crucial issue is whether Plaintiff is able to "perform the essential functions of the employment position" with or without reasonable accommodation. *See* 42 U.S.C. §§ 12111(8).

An "essential function" may be established by evidence that includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs. *Moritz*, 147 F.3d at

787 (internal quotations omitted). An employer's identification of a position's essential functions is given some deference under the ADA. *See Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445-46 (8th Cir. 1998); 42 U.S.C. §§ 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential."). The Inn considers vacuuming to be an essential function of the p.m. housekeeping supervisor because it deems all housekeeping supervisors to be "working" supervisors. *See* Elabbady Dep., at 7-8; Christensen Dep., at 15-16, 19-20; Radke Dep., at 10-11, 13, 17-18; Trammell Dep., at 21. Plaintiff's job description specified that her duties included assisting her superiors in maintaining the cleanliness of the Inn's facilities and assisting in other subordinate job classifications as necessary. Lindeman Aff. Ex. D. Vacuuming is an essential function of being a housekeeping supervisor at the Inn.

The record indicates that Plaintiff, through her physician, communicated to the Inn her permanent restriction from vacuuming. Plaintiff must show that a reasonable accommodation, allowing her to perform the essential functions of her job, is possible. *Buckles v. First Data Resources, Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999). The ADA does not require the Inn to provide reasonable accommodation to Plaintiff if it would impose an undue hardship on the Inn. *See* 42 U.S.C. § 12112(b)(5)(A). An accommodation is unreasonable if it "either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program." *DeBord v. Bd. of Educ.*, 126 F.3d 1102, 1106 (8th Cir. 1997). The Inn is not required to delegate essential functions of the p.m. housekeeping supervisor position to other individuals in order to accommodate Plaintiff. *See Moritz*, 147 F.3d at 788.

In order to maintain a clean hotel facility, the Inn reasonably may require all its housekeeping staff, including supervisors, to be available to vacuum when necessary. The Eighth Circuit has held that employers may require employees to be regularly available to perform certain functions even though employees may spend only a small amount of their time actually performing such duties. *See Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855, 858 (8th Cir. 2000); *Moritz*, 147 F.3d at 787. If the Inn allowed Plaintiff to remain as a p.m. housekeeping supervisor while not requiring her to vacuum, it would fundamentally alter the nature of the job. Such an accommodation is unreasonable under the circumstances of this case. Because Plaintiff fails to present a genuine issue of material fact regarding whether she can perform the essential functions of the employment position with reasonable accommodation, summary judgment is appropriate.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 25] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: February 15, 2002

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd